## Burton v. McCoun et al.

April 25, 1947.

Walter R. Prater, Judge.

Grannis Bach for appellant.

Williams & Allen for appellees.

Opinion of the Court by Judge Thomas—Reversing.

Some short time prior to June 29, 1946, the appellant, Lillie Rose Burton, filed this action in the Breathitt circuit court against S. C. McCoun and the Winchester Bank in which she sought to recover judgment against defendant, McCoun, on various notes she held against him amounting in the aggregate to more than $8,000 to secure which plaintiff held a second mortgage on a local gas plant owned and operated by defendant, McCoun, in Jackson, Kentucky, including certain gas leases, pipelines and gas wells owned by him and by and through which he obtained the gas necessary for the operation of his gas plant.

Plaintiff's lien as alleged by her in her petition was inferior to a prior one held by the Winchester Bank on the same property above described to secure an indebtedness held by it against McCoun for various notes aggregating $8,755. It filed an answer and cross-petition setting up its indebtedness and prayed judgment therefor and the enforcement of its lien on the property above described. On the above date (June 29, 1946) the court rendered judgment against McCoun in favor of appellant for the amount of her indebtedness and in favor of the Winchester Bank for the amount of its indebtedness and directed the property mortgaged to them in the order named to be sold by the Master Commissioner, but in the judgment each creditor was given the right of execution to satisfy their respective judgments.

McCoun owned a house and lot in Jackson, Kentucky, the nature of which is not disclosed, but the value of which is shown to have been something near $12,000, but that property was not ordered to be sold in the action above referred to.

On September 12, 1946, appellant obtained an execution on her judgment against McCoun which was levied by the sheriff of Breathitt County on the mortgaged property supra and on the house and lot referred to which he later, on November 11, 1946, sold in satisfaction of that execution. At that sale McCoun became the purchaser of the gas plant and its appurtenances, as well as the house and lot, but the sheriff in his levy of the execution on the latter property stated that it was

subject to a prior and superior lien in favor of the Winchester Bank, but which that defendant had not asserted in the action in which it recovered its judgment supra. So that the purchaser, and defendant in the action (as well as in the judgments) bought all of the property sold by the sheriff, subject to liens held by the Winchester Bank.

After he was accepted by the sheriff as the purchaser, McCoun executed bond with surety whereby he agreed to pay to appellant, and plaintiff in the execution, her entire indebtedness, including interest to that date, in the total amount of $8,865.34 which obligation was delivered to the sheriff who made the sale. Following that sale as so completed, McCoun filed in the action, in which the judgment supra was rendered, his exception thereto "because the same was not authorized by the judgment and was in direct violation thereof," and also because the judgment ordered the sale of the property by the Master Commissioner upon the request of either plaintiff or defendant in the respective judgments rendered which neither of them had done when appellant obtained her execution. The court on final hearing of the exceptions held and adjudged "that the said sheriff's sale and all proceedings thereunder are null and void and said sheriff's sale under the execution issued herein is now set aside and held for naught, and the sale bond executed by S. C. McCoun is also set aside and cancelled." From that judgment appellant prosecutes this appeal.

Appellee's counsel in support of the judgment cites a number of cases from this court to the effect that a levy of an execution or a sale thereunder on property encumbered by a lien has no greater effect than to give the plaintiff in the execution a lien upon the property inferior, however, to the holder of the prior lien and which rule we freely admit to be the prevailing and undisputed one. Among the latest of the opinions to that effect, and cited by appellee's counsel, is Pineville Steam Laundry v. Phillips, 254 Ky. 391, 71 S. W. 2d 980, in which it was stated that the sale under execution in such circumstances was "illegal and unauthorized by law, and passed nothing to the purchaser." A number of other cases to the same effect are cited, as we have said, but none of them involve the question in this case

as urged by appellant, and which is, that McCoun, the defendant in the execution, waived his right to prevent an execution sale of his property by becoming the chief actor therein without raising in any manner any objections thereto.

Some of our opinions appear to hold that in such circumstances the execution sale is void, but which we think is incorrect and that it should be more appropriately defined as voidable . But if it should be held to be void, then the definition of waiver as given in 67 C. J. 289, sec. 1 and continuing on following pages, is broad enough to apply the doctrine of waiver to void transactions affecting private rights when necessary to preserve the right of one whose rights may be affected thereby. In the cases of Bonar v. Commonwealth, 180 Ky. 338, 344, 202 S. W. 676, and James v. Commonwealth, 197 Ky. 577, 247 S. W. 945, we held that the defendant in an indictment may waive his constitutional right of being confronted with his witnesses, and if such right can be waived it would appear that there would be less objection to the waiver of a statutory right by one whose property rights only are affected.

The purpose of forbidding a sale of the property under execution so as to convey title thereto when it is in lien to another is to protect the rights of either the plaintiff or the defendant in the execution and the rights of the holder of the prior lien. Both the plaintiff and the defendant in the execution sale in this case consented to the levy of the execution and the sale thereunder, and it is our conclusion that such participation constituted a waiver of the right of the judgment debtor, who was the defendant in the action, to later set aside the levy and the sale thereunder; and most especially so when the rights of no party have been invaded or in the least impaired. The Bank in this case still has its first lien on both items of property sold by the sheriff at his execution sale. The bond executed by McCoun to appellant satisfies in full all of her indebtedness. McCoun by his action in buying the property and executing his bond referred to, consented that appellant's judgment against him became liquidated in that manner, and it is our firm conviction that such participation on his part constituted a waiver of the irregularity of the levy, and of the sale thereunder by the

sheriff, which conclusion, as we interpret our former opinions, is not in conflict with any of them, since in none of them was the question of waiver, as is here presented, involved.

In substantiation of that conclusion we cite the text in 23 C. J. 666, sec. 654, saying: "The rule is well recognized that the formalities required to be observed in the conduct of execution sales are designed for the protection and benefit of those interested in the property and its proceeds, and may be waived by their common consent. Accordingly a person may, by his acquiescence in a sheriff's sale, his participation in or ratificatiion of acts of irregularity, or by the acceptance of the benefits of such sale with knowledge that it was not properly conducted, be estopped from afterward asking to have it vacated either by motion or by a suit in equity; * * *." Sec. 33 C. J. S. Executions, sec. 228.

As applying specifically to the execution debtor (McCoun in this case) the text of 23 C. J. on page 667, sec. 655, says: "The execution debtor may be estopped by his conduct from attacking the sale, as where he participates in, or has knowledge of and assents to, irregularities in the conduct of the sale. Provisions for the benefit of the debtor, relating to the writ, levy, or sale, may ordinarily be waived by him, unless he is in failing circumstances, as by failure to object to a sale en masse. Objections may be waived by failure to move to quash the writ, * * *." See 33 C. J. S. Executions, sec. 228.

Numerous cases from various courts are cited in support of the inserted text, many of which we have read and find them sustaining the statement of the text in support of which they are cited. Other texts dealing with the question are in accord with the inserted excerpts from Corpus Juris. One of the cases cited in support of the inserted text is Magowen v. Hay, 10 Ky. 452, 3 A. K. Marsh. 452, the opinion being written by Judge Owsley. After stating the facts out of which the litigation arose (which the reader may obtain from the opinion) the court said: "* * * however informal the execution and endorsement may be, it was competent for Hardwick to surrender his negro to the constable for the purpose of having her sold, to satisfy the de-

mand against him, and in the present case he is proven not only to have delivered the negro to the constable for the purpose of having her sold, but he appears, moreover, to have been present at the sale, and then made no objection to the sale.''

However, if we were without any supporting text to sustain the contention of appellant that McCoun waived the irregularities of which he complains in his exceptions to the execution sale, we would still conclude—as based on fundamental principles of the law and logic, as well as justice and common sense—that a debtor who participated in the sale of his property under execution, as did McCoun in this case, should become bound by his actions and to be compelled to accept the situation in which he with a knowledge of the facts, voluntarily placed himself, and which, after all, is the underlying principle of the doctrine of waiver.

Especially should the rule of ''Waiver'' apply to one who is sui juris and who possessed knowledge of the facts, all of which was true as to appellee, McCoun. To hold otherwise would practically, if not entirely, eliminate the doctrine of ''Waiver'' as a long recognized part of the law of the land. It and its closely allied and kindred doctrine of ''Estoppel in pais'' are designed and employed to prevent a litigant from speaking or acting when he would after failing to do so when he could, to the detriment of his adversary, whereby he may reap profit.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside and to overrule the exceptions to the execution sale, and for further proceedings consistent with this opinion.